Argued and submitted December 3, 1984, reversed on appeal, affirmed on cross-appeal May 15, reconsideration denied July 5, petition for review denied August 8, 1985 (299 Or 583)

GULL INDUSTRIES, INC.,
*Respondent - Cross-Appellant,*

*v.*

MUSTANG GAS AND OIL CO.,
*Third-Party Plaintiff,*

*v.*

FLETCHER OIL,
*Third-Party Defendant,*
FIRST STATE BANK OF OREGON,
*Appellant - Cross-Respondent.*

(A8011-06369; CA A33317)

699 P2d 1134

Mildred J. Carmack, Portland, argued the cause for appellant - cross-respondent. With her on the briefs were Charles R. Markley and Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

David P. Roy, Portland, argued the cause for respondent - cross-appellant. On the brief were John A. Shelley and Black, Helterline, Beck & Rappleyea, Portland.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

YOUNG, J.

## YOUNG, J.

This is a garnishment proceeding arising out of an action by Gull Industries, Inc. (Gull), against Mustang Gas and Oil Company (Mustang). In that action, the trial court entered a "judgment order" awarding Gull a judgment against Mustang. Gull then served a writ of garnishment on First State Bank of Oregon (Bank), which filed a certificate that it held nothing belonging to Mustang. Gull filed allegations that Bank's certificate was unsatisfactory, and Bank answered the allegations. After trial to the court, and pursuant to *former* ORS 29.360,[1] Gull was awarded a judgment against Bank for $44,703.42. Bank appeals, and Gull cross-appeals. We reverse on the appeal and affirm on the cross-appeal.

In November, 1980, Gull filed an action against Mustang on an account. Mustang answered and asserted a counterclaim. The trial court granted summary judgment in Gull's favor and entered a "judgment order" for $176,799.41. The order did not dispose of Mustang's counterclaim.

On March 30, 1981, Bank was served with a writ of garnishment. In response, Bank transferred a sum that represented one of Mustang's checking account balances, $44,703.42, to a holding account.[2] On the same day that Bank was served with the writ, Mustang appeared in the trial court *ex parte* and moved to set aside the judgment. In support of that motion, Mustang contended that the judgment failed to comply with the requirements of *former* ORS 18.125[3] and was, therefore, not a "final" judgment.

The trial court directed Mustang's attorney to prepare an order "setting aside the execution of garnishment." Instead, the attorney prepared an order setting aside the judgment and conformed a copy of the order to show that it was signed by the trial judge on March 31, 1981. In fact, the trial judge signed the order on April 1; it was filed on April 3 and entered on April 6. On April 6, Bank answered the writ and noted on the certificate that funds had been released on

---

[1] All reference are to the garnishment statutes in effect in 1979. *Repealed* by Or Laws 1981, ch 883, § 1 and ch 898, § 53.

[2] Mustang had a second account with Bank. At the time the writ was served, that account had a balance of $222.54.

[3] *Repealed* by Or Laws 1981, ch 898, § 53; *replaced by* ORCP 67B.

March 31. On April 7, the trial judge ordered that the order of April 3 "shall not be entered and the 'status quo' immediately prior thereto shall be maintained subject to further order of this court." On April 10, the trial judge ordered a stay of execution; that stay was lifted on May 1.

Bank makes two assignments of error. The first asserts that the March 25, 1981, judgment was legally insufficient to support the writ of garnishment. Bank's first assignment is predicated on three independent bases: first, the judgment was not "final" within the meaning of *former* ORS 18.125; second, by the time its certificate was due, Bank had no legal obligation to respond to the writ; and, third, even if Bank failed properly to respond to the writ, Gull suffered no damage. Bank's second assignment contends, alternatively, that the limit of Bank's liability to Gull is $222.54, the amount of Mustang's second account with Bank. We agree that the judgment was not final and hold that, as a result, Gull suffered no damages.

The March 25, 1981, judgment provided:

"[P]laintiff shall have judgment against defendant in the amount of $176,799.41 together with interest thereon at the rate of 12 percent per annum from November 3, 1980 until paid, and there being no just reason for further delay, that execution issue therefor."

Bank contends that the judgment is not "final," within the meaning of *former* ORS 18.125(1), because it fails either to dispose of Mustang's counterclaim or to make the required determination that there is no just reason for delay *and* expressly direct the entry of judgment. *Former* ORS 18.125(1) provided:

"(1)   When more than one demand for relief is presented in a suit or action, whether as multiple causes of suit or action, counterclaims, cross-claims, or third-party actions or suits, or when multiple parties are involved, the court may direct the entry of a final judgment or decree as to one or more but fewer than all of the causes of suit or action or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment or decree. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the causes of suit or action or the rights and liabilities of fewer than all the parties shall not

terminate the proceeding as to any of the causes of suit or action or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment or decree adjudicating all the causes of suit or action and the rights and liabilities of all the parties."

In support of the judgment, Gull argues, first, that the judgment is "final"; second, that for purposes of issuing a writ of garnishment, a judgment need not be a "final" judgment; and, third, that if a judgment must be "final" to support a writ of garnishment and, if this is not a "final" judgment, Bank, as garnishee, is nevertheless not permitted to look behind a writ of garnishment, valid on its face, to determine the validity of the underlying judgment. We reject Gull's first two arguments; although the third is technically correct, it does not support the trial court's award of damages.

■ First, Gull contends that the judgment's direction that "execution issue therefor" satisfies the requirement for direction of entry of judgment, because "there could be no execution without entry of judgment." We do not agree. In *Hale v. County of Multnomah,* 298 Or 141, 689 P2d 1290 (1984), the Supreme Court, interpreting similar language in ORCP 67B,[4] the successor to ORS 18.125, stated:

"Although in this case the trial court made an express determination that there was no just reason for delay, the document entitled 'Final Judgment' signed by the trial court does not contain an 'express direction for the entry of judgment' and thus does not track the language of ORCP 67B. Even though it is implicit that the trial court intended that the judgment be entered immediately, and not at the conclusion of the entire action, we hold that the absence of an express direction to enter judgment is fatal."

---

[4] ORCP 67B provides:

"When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

Under *Hale,* the judgment in the present case is not "final." It does not dispose of Mustang's counterclaims, nor does it contain the language required by *former* ORS 18.125(1).[5]

■　　Gull next contends that a judgment need not be "final," under *former* ORS 18.125(1), to support the issuance of a writ of garnishment. We do not agree. *Former* ORS 18.125(1), enacted by the 1977 legislature, is modeled after FRCP 54(b). *Portland Elec. & Plumb. v. Cooke,* 51 Or App 555, 560 n 3, 626 P2d 397 (1981). 10 Wright & Miller, *Federal Practice and Procedure* § 2661 states:

> "Because Rule 54(b) provides a means of rendering a final judgment on part of a multiple-claim or multiple-party action it has an effect on various other rules or procedures connected with the rendition of judgment. For example, as was stated earlier, once there has been a Rule 54(b) certification and a final judgment has been entered, the time for appeal begins to run. Similarly, res judicata principles are based on a final judgment so that since a Rule 54(b) order is viewed as final, it has res judicata effect. On the other hand, if no certificate issues, the court's decision or order remains interlocutory and the above effects will not take place.
>
> "Other matters that should be noted in relation to the entry of a judgment under Rule 54(b) are that it enables a lien to be imposed on the judgment debtor's property and a writ of execution to be issued to begin the process of collecting any damage award * * *." (Citations omitted.)

In *Redding & Company v. Russwine Construction Corporation,* 417 F2d 721 (DC Cir 1969), the court considered whether, consistently with FRCP 54(b), an interlocutory order would support the issuance of execution on a mechanic's lien:

> "An execution ordinarily may issue only upon a final judgment. Rule 54(b) specifies, relevantly to finality, that in any case involving multiple claims or multiple parties 'the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an *express* determination that there is no just reason for delay

---

[5] ORCP 67A provides:

" 'Judgment' as used in these rules is the final determination of the rights of the parties in an action; judgment includes a decree and a final judgment entered pursuant to section B. or G. of this rule. 'Order' as used in these rules is any other determination by a court or judge which is intermediate in nature."

and upon an *express* direction for the entry of judgment * * *.'
* * * The rule's requirement of explication in the two respects
mentioned is not a technicality in the interest of form; rather,
it serves primarily the important function of denoting
unmistakably that a final order has been entered so that the
losing party may either file a timely appeal or pay the
judgment. We think the role Rule 54(b) plays with reference to
the finality of a judgment for the purposes of appeal has
implications as regards its finality for purposes of execution as
well." 417 F2d at 727. (Citations omitted; emphasis in origi-
nal.)

In the present case, Mustang had counterclaimed for antitrust
violations and breach of trust. The damages alleged in the
counterclaims exceeded the amount of Gull's judgment. The
facts of the present case make manifest the need for a careful
determination by the trial court before making the requisite
findings and directions under *former* ORS 18.125(1) and
ORCP 67B.

■      Gull contends, finally, that even if a "final" judgment
is required to support the issuance of a writ of garnishment
and even if the trial court in fact issued a judgment that was
not final, nevertheless Bank, as garnishee, had a statutory
duty to respond to the writ, valid on its face, irrespective of the
validity of the underlying judgment. *Former* ORS 23.660(1)
defined a garnishee's duties:

"A writ of garnishment shall require the garnishee to
answer directly to the court and to deliver to the clerk of the
court property of the judgment debtor in the garnishee's
possession or control or indebtedness owing to the judgment
debtor by the garnishee that is not exempt from execution or
garnishment and that does not exceed the amount of the
judgment and fee for service of the writ. If the property or debt
is not conveniently deliverable to the clerk of the court, the
writ of garnishment shall require the garnishee to answer
directly to the court and to describe the amounts and kinds of
property or debt."

*Former* ORS 29.360 defined a garnishee's liablity for its failure
to respond properly to a writ:

"If by the answer it shall appear, or if upon trial it shall be
found, that the garnishee, at the time of the service of the copy
of the writ of attachment and notice, had any property as to
which such garnishee or officer thereof is required to give a
certificate, as provided in ORS 29.280, beyond the amount

admitted in the certificate, or in any amount if the certificate was refused, judgment may be given against the garnishee for the value thereof in money."

The garnishee's duties, as defined by *former* ORS 23.660(1) are independent of the validity of the writ.[6]

■    Although Bank may not assert the writ's invalidity as an excuse for any failure to respond to it properly, that invalidity would affect its liability under ORS 29.360 for failing to respond.[7] If the writ was invalid, Mustang could have successfully claimed any money Bank paid in response to the writ. *See former* ORS 29.400. As a result, Gull would have received nothing from the garnishment, and it has not been damaged by Bank's failure to respond. In fact, the writ was invalid because there was no final judgment. *Former* ORS 23.655(1) provided:

"A party in whose favor a judgment is given, which requires the payment of money, *may at any time after the entry thereof, and so long as the judgment remains a lien,* have one or more writs of garnishment for its enforcement." (Emphasis supplied.)

Because the judgment was not final under *former* ORS 18.125(1), it was not a lien and thus could not support the issuance of the writ. The writ was therefore invalid. No damages could result from Bank's failure to respond properly to the writ. It was therefore error to enter judgment against Bank.

     Our disposition of this issue makes moot Bank's other assignments of error and determines Gull's cross-appeal.[8]

---

[6] ORS 29.195(1) now provides:

"The garnishee shall examine the writ of garnishment to determine whether the writ complies on its face with ORS 29.145(2). The garnishee shall have no duty to determine whether the plaintiff or sheriff or other person has complied with the requirements of ORS 29.125 to 29.375 or to otherwise determine the effectiveness of the garnishment."

We believe that this provision restated previous law and that Bank's duty was only to determine whether the garnishment was valid on its face.

[7] Because the writ was valid on its face, Bank would not be liable to Mustang if it had complied with the writ and had delivered the money to the clerk of the court. Bank's obligations would have ended with that action, and Mustang could have then sought a court order releasing the money to it on the ground that the writ was invalid.

[8] Nothing in this opinion should be taken as deciding whether a garnishee that is

Reversed on appeal; affirmed on cross-appeal.

sued under the successor provision of *former* ORS 29.360 (current version at ORS 29.345) may defend by attacking the validity of the underlying judgment.